We have four argued cases this morning, and I'll just note with respect to the third one, number 19-1041, in the aluminum stain, that there's a proposal here by Council to have two rebuttal arguments, and we should understand that we're not going to allow that. There can only be one rebuttal argument by either of the two councils, so you should prepare for that assumption. Our first case is number 18-1366, Veritas Technologies LLC v. Realtime Data, LLC. Mr. Gaiarsa. Thank you, Your Honor. May it please the Court, Robert Gaiarsa from Latham Watkins for Veritas Technologies. The obviousness of the claims in this case is straightforward. There can be no dispute that all of the elements were known, and it was common sense to combine them. Osterlund specifically taught the supposedly inventive heart of the claimed invention, which was faster storage through data compression, and it taught two ways to achieve that. The first one was less overall total data, and the second was that the use of compression with negligible delay. On page 20 of the Gray Brief, all housekeeping, you state that the Board only found Dr. Zager's testimony to be more persuasive by incorrectly discrediting Dr. Kruse's view of the prior argument. Did you raise that in the Blue Brief? No, Your Honor. Is it barred on reply? How do you get it in? I believe it's a legal argument, Your Honor. What we argued that was the underlying interpretation of the prior art was wrong. That was definitely raised in the Blue Brief. And the prior art here is clear. The only remaining element that's still out there after Osterlund is Frank Cech's teaching of the less data. Yeah, but I'll tell you what your problem is. Your problem is that your expert witness sort of got really confused and confusing when he was examined by the other side. And the Board relied heavily on that and said that he wasn't able to tell us basically how to combine the two and therefore we're not going to find it's obvious. It's a fair description of what the Board said? That is what the Board said, Your Honor. So why is that wrong? It's wrong for numerous reasons, Your Honor. First, the Board said that what Dr. Kruse testified to was that there's unlimited permutations and therefore it's impossible to address how to actually combine them. That's not what he said. In context, what he said was there's unlimited permutations because the patent itself has no restrictions. The patent itself has no restrictions on data type. It has no restrictions on algorithm. And Dr. Kruse didn't stop there. He actually gave specific examples. For the data type he intended to use, he talked about how an engineer at Microsoft would be tailoring the system to Microsoft Word or a Seagate engineer would be tailoring it for hard drive information. And then he also said for algorithms, he specifically identified those in Frenicheck were well known to be fast algorithms. So you have Osterlund here which says store it faster by compressing it first and then one of ordinary skill in the art will clearly look to analogous art and then find Frenicheck which says you get better compression which is the first goal that Osterlund says expressly. You get better compression by tailoring the encoder to the data block itself. And not surprisingly, Frenicheck says you're going to use these very fast algorithms that are known to be very fast in the art. Run length encoding, dictionary encoding. But when you look at his testimony, you can interpret it. And I think the board did interpret it as saying there's so many ways of doing this, I wouldn't know how to do it. And then there was no redirect, if I understand correctly, that repaired that confusion. What he said, Your Honor, was that hypothetically, if you were to address all the types of data, all the intended applications, all the goals and all the algorithms, there are unlimited ways of doing that. That's not the problem with the test itself. That's the problem with the patent. As he pointed out, Dr. Cressere said there's no limit, for example, on the type of data in the patent. So of course the hypothetical is going to have to rely on the ordinary skill in the art, the background knowledge, to fill in those gaps exactly as the patentee did. The patentee expressly said you can specifically tailor it for any specific application. You can address any type of data by using, even future data, by using a, quote, full complement of algorithms. That's the same thing that Dr. Cressere said one of ordinary skill in the art would do when faced with this void of teaching, which is we don't know what data type to use. Dr. Cressere said you would use all of the algorithms in Franticek. And we know those algorithms in Franticek are very fast. And we know that because Dr. Cressere said so and the patentee confirmed it. The patentee expressly said you can use these algorithms. Indeed, those algorithms, Huffman, run length, dictionary, arithmetic, are among the only ones that are expressly disclosed in the patent. Where did the patentee's witness say that these Franticek algorithms were very fast? I'm sorry, sir. Where did the patentee's expert say that the Franticek algorithms were very fast? The patentee's expert did not say that, Your Honor. Dr. Cressere did. The patent did. The patent said that? These algorithms, yes. The patent said on column 7, lines 55 to 60, for example. Hang on. What page of the appendix is that? Apex 86. Thank you. They said it's well known within the current art. I'm sorry. What line, anyone? This column 7 line? 55 to 61. Okay. It's well known within the current art that certain data compression techniques are not limited to dictionary compression, run length encoding, null suppression, arithmetic compression, or capable of encoding data when received. Method 1 possesses the advantage of a minimum delay from the time of receipt of input. So the patentee is clearly saying these process data immediately when received, therefore there's a minimum delay. Those are the exact same algorithms that Franticek used. This is the exact point that Dr. Cressere repeatedly made, and you can find that at Apex 2765, 55, and 75 to 76. He said one of ordinary skill in the art, when presented with this goal in Osterlund of reducing the amount of data, is going to look to Franticek. And everyone of ordinary skill in the art knows that those algorithms in Franticek are very fast. So, of course, you can expect success. And that's the problem here, is that these ideas that are in the patent have no restrictions, they're just functional. What about the idea that was propounded by the patentee's expert, that if you used sampling, you would introduce delay? And I don't see that Dr. Cressere really addressed that. Am I mistaken? Dr. Cressere did not address that, but what he did say is that sampling itself shows that Franticek was concerned about time, because sampling actually decreases the time it takes, because you're not going to waste time doing an entire block. As the patent says, you're going to do an entire block and another one, and then you're going to use a timer to determine which of those blocks was fully done. It's going to sample it. So that actually shows that it's faster, that Franticek is more concerned with speed. And so you have Osterlund with his teaching, two teachings, that say faster data storage by compressing it better, and also by using something with negligible delay. One of Ordnance, Skill, and the Art could look to Franticek easily, and they would, and know that you can compress it better with Franticek's method, which fills in the only gap that's missing, the only idea that's missing. And they would know that it was very fast. The same algorithms that the patentee disclosed. And in that way, there's almost no daylight between this case and Inri Kuban. Inri Kuban, the court found that it was obvious, that the method there was obvious, because the prior element... How do we know that Franticek and Sue used the same algorithms? Osterlund, excuse me, Franticek and Osterlund used the same algorithms? So Osterlund itself disclosed the use of Lempel-Ziv in the stack compressor, Your Honor. So that's one of the other groups of compression algorithms that the patentee said in those sites that you can actually use. And for the record, Your Honor, the patentee also talked about those compression algorithms at column 12, lines 1 to 10, and columns 14, 45 to 49. But I guess if I understand what you're saying, is that there is some overlap between the Osterlund and Franticek algorithms, but not complete overlap, right? It's the same group of algorithms, yes, Your Honor. So Osterlund already disclosed using Lempel-Ziv, the stack compressor, which is one of the algorithms, one of the well-known algorithms that the patentee... I'm sorry, is my statement right or wrong, that there's overlap but not complete overlap? There's overlap in that it's one of the algorithms that's disclosed in the patent. But there's not complete overlap? Correct, and the reason why it's not complete overlap is because what's missing from Osterlund, ostensibly, is Franticek's teaching that you use multiple encoders, which was a basic idea well-known in the art. And that's the reason why they said you can use Lempel-Ziv, the stack compressor, and that was also known to be very fast at the same time. But Franticek filled in that gap. Franticek said, look at these individual algorithms that you can use, the same algorithms that the patentee did. And in that way, it's the same way in Rekubin. In Rekubin, this Court noted that it was obvious, in part because you were looking at the same cloning manual that was said to be conventional. That cloning manual was in the prior art and it was in the patent. The same thing is true here. It's the same algorithms in the prior art as in the patent. And everyone knew that they were very fast, as Dr. Corsair repeatedly said, and the patentee confirmed in the patent itself. In your petition, or in the petition that was filed before the PTO, the focus seems to be on Franticek as modified by Osterlund. It seems to be different than a combination of Osterlund as modified by Franticek. Do I understand how the petition is written? Do you think it's Osterland in view of Franticek, or is it Franticek in view of Osterlund? They're essentially interchangeable, Your Honor. As Dr. Corsair explained, you simply put Franticek, that system, in the data stream where Osterlund taught you to put it. Well, I'm asking, what is the primary reference? What should the Board have understood to be the primary reference when it looked at the petition? They could have looked at either, Your Honor. I believe it was Franticek being modified by Osterlund, and that modification is quite simple. How would you know that it could be either? Because most of the time you have to identify a primary reference as modified by a secondary reference, and it doesn't usually work that you can just flip them. In this context, Your Honor, it could be either because it's so simple. It's just the idea. Franticek discloses the algorithm, the compressor to use, and Osterlund discloses the location. So you could say it's improving the compressor in Osterlund, or you could say Osterlund's teaching where to put the Franticek compressor. Does the petition say that? It doesn't say that. It says that it teaches where to put the Franticek compressor. And as Dr. Crusare explained, that's a very simple idea. You simply place the Franticek compressor in the data stream. So that's what the combination is. Either one is obvious, Your Honor. And even if you're going with what the petition specifically said, placing Franticek in the data stream is a much simpler combination because then you have all the components in Franticek that you know are already fast algorithms, and it's just the location of that individual compression. Are you going to do it before or after storage? And indeed, that's the problem with this patent. It's just an idea. That's why Dr. Crusare said there are unlimited possibilities if you don't restrict any of these things. And indeed, that's why this patent was also struck down under 101 by the court in Delaware. But here, it's also obvious for that same reason. Do you agree that you had said earlier that the compression would be very fast? But do you have to actually show that the data storage with compression would be faster than the storage without compression? Isn't that what's required for the claim? That's required. As Dr. Zeger admitted, the only way you know if you practice these claims is if you actually built the system and you tested it. So the only way post hoc that you know that is you have to test it. So going into it, the test for obviousness is not whether the outcome could be exactly the same thing. It's the teachings would produce it. And here it's clear that the teachings would produce it if you combine it because, as Dr. Crusare explained, one of ordinary skill in the art would expect success because those algorithms are fast. And we know that's true because the patentees confirmed it. Those are among the only ones that are expressly disclosed in the patent. So what you have here is a system that says, and teaches, compress it, compress it faster. And you have Frantisek that says, here's a way to compress it faster. And by the way, everyone knows that those compression algorithms that are being used are the fast ones, the same ones that the patentee used. What Frantisek teaches, as I understand, is to seek maximum compression, right? Yes. And that doesn't necessarily mean that it's fast. It doesn't. Right. So the idea is, because of Osterlin, you would layer that on top, the faster requirement, on top of the maximum compression. Right? Yes. So you'd simply test. And that's exactly what the patentee's experts agreed you could do. You would test to see what's faster. Osterlin expressly tells you, and you have that expressed teaching, that it should be negligible delay. And there's agreement between the patent disclosure and Dr. Crusare that those algorithms are the fast ones. So even if this were reduced to an obvious to try theory, you would certainly have expected success using the known fast algorithms, and the patentee confirmed that in the specification itself. Okay. Unless there are further questions. All right. We'll give you two minutes for that. Thank you. Mr. Neruzzi. Thank you, Your Honors. And may it please the court, Kayvon Neruzzi for real-time data. Your Honors, as a starting point, I think Judge Wallach touched on the key initial issue, which is that there are two factual grounds or findings, writ large, for the board's decision. One of them is based on the testimony of Dr. Zeger standing alone. That aspect was not challenged in the blue brief. And therefore, everything that the appellant does challenge in the blue brief becomes immaterial because there is an independent basis that supports the board's decision under substantial evidence that was not challenged. It's been weighed. They try to argue those issues for the first time in the reply brief, and that's simply not proper, Your Honors. However, let's go into the substance of the issues that were discussed. And I think what we heard just now is precisely the type of argument that we should not be having at the Federal Circuit, which is a re-weighing of the factual evidence and delving into the board weigh the evidence correctly or not. This is a substantial evidence review standard. The board's decision is extremely detailed. It's extremely considerate. There was a lot of factual development below, and this is exactly the type of decision. What did your witness say about why you wouldn't combine Osterlund and Franacek? Why would you not combine Osterlund and Franacek? So, Your Honor, as a starting point, Franacek is a system, as you said, that is directed to maximum data compression, and that means that inherently it's going to take as a result. But this is what you're saying. Tell me what your witness said. He did say that. He talked about that issue. And he said what? And he said that Franacek and Osterlund have different goals and very different designs. And so here's a key point that I did not hear come up, and there was maybe some confusion on this factual point that is significant. Osterlund has one and only one data compression algorithm. It's not a common run-of-the-mill data compression algorithm. It's a sort of bespoke custom algorithm for Osterlund's system. That doesn't appear in Franacek? That does not appear. It depends on how you characterize levels of data compression algorithms. There is a very broad category of compression families that fall under the heading of Lempel-Ziv. Within that category, there are a lot of permutations and variations and modifications and innovations. There's Lempel-Ziv Welsh, which is recognized in the industry as being a significant improvement on Lempel-Ziv, so it's not exactly the same thing. And within the Osterlund teachings, there is a particular custom algorithm, the stack algorithm, that's actually hard-coded into the Osterlund compression chip. Okay, but why did your witness say it would be non-obvious to take Franacek and impose on that a goal of seeking faster compression or data transfer? Well, Your Honor, the combination is based on specific elements and prior references, and so our expert addressed the combination of Franacek and Osterlund. He also did address this concept that you asked about, too, so let me address it in both instances. And I'll start with your question. Franacek is a system that is directed to maximum data compression, and so if we look at the diagram that Dr. Zieger provided that the Board credited, which is on Appendix 20 and reproduced on page 12 of our briefing, there are a series of— I'm just trying to understand what your witness said. Why did he say you wouldn't seek faster data transfer as a goal to be added to what's in Franacek? Okay, Your Honor, thank you. That is a nonsensical sort of goal that doesn't meet the claims. That's what our expert said, right? So seeking faster data transfer doesn't meet the limitation of the claim. Anyone might want faster data transfer any time. No one's going to argue with a general desire to do things faster. The question is, can you do it? How can you do it with specificity? And if you do it that way, does it meet the claim limitation? The claim limitation is not simply about faster data transfer as a starting point. Okay, all right. So perhaps my summary of what the claim requires was inaccurate. What does your witness say about why the faster goal of Osterland wouldn't be incorporated into Franacek? Your Honor, that is not – okay, let me try to rephrase this. Our witness says two things, if I can summarize and sort of – Where does he say this? Show us where he said it. Well, Your Honor, the Board discussed it extensively in Appendix 20. No, but forget about the Board. I think what we would like to see is where is actual testimony. Sure. So we summarize this. I'm not hearing you summarize it. Where is he testifying to it? Well, I'm trying to pull up the appendix, Your Honor. If you'd allow me. Okay. For example, in paragraphs 152 to 169 of Dr. Sears – What page, Your Honor? What page in the appendix? Yes, Your Honor. I don't – let me get into the appendix. You're supposed to come here to be familiar with the appendix, to help us. That's the general expectation. Your Honor, the credit given to Dr. Zevers' testimony is undisputed. No, you're not responding to what I'm telling you. You're supposed to come here to be able to tell us where to find the things you're relying on in the appendix. That's part of the preparation that's expected of counsel. So Dr. Zeger testifies at Appendix 7146, for instance. And what were the paragraphs? It is – I will say it's quite a long range of testimony, but let's start with paragraph 152 on 7141. And from this point forward, Dr. Zeger explains the process of Franachek's compression method and the inherent delays in that compression method. And he concludes in this section and other sections that a person of steel would not be motivated to make the combination. Where does he say that? Go ahead. So starting at Appendix 7177. And also – Where? Where? The heading right there at the bottom, Your Honor. Osterlund's teaching of a compression-decompression module that is capable of compressing and decompressing data with negligible delay does not support Dr. Kruzer's modifications to Franachek. And then further on Appendix 7197, heading B, a combination of Franachek and Osterlund would not have been obvious. As he explains right there, the proposed modifications would defeat the purpose of Franachek's. And what does he mean by that? That if you included the faster limitation, that would sometimes mean that you wouldn't get maximum compression? What he means by that is that Osterlund has just one compressor. And so are we – now let me put it this way. Are we combining abstract ideas or are we combining actual teachings of the prior? Because if we're combining the idea of take something that exists and just make it faster, then sure, I guess we could always say that and then move on. The question is focusing on Osterlund's express suggestion that you should try to use a faster technique to try to make the storage and memory faster, whether it would have been obvious to modify Franachek and do that teaching of Osterlund. It would not have been obvious to modify Franachek based on any specific teaching that's in Osterlund. So Osterlund says, I like to compress data quickly using one encoder. And that's why I design my system the way I do. Because to get fast compression in Osterlund, it only uses one encoder. And it has a very simple process for achieving its compression. Franachek says, I want maximum data storage. Therefore, I have a complex process. So the theory is that if you use the specific data compression methodology disclosed in Osterlund, that that would be somehow inconsistent with Franachek? Your expert, as I recall, your expert says at the beginning of his testimony that Franachek is simply not interested in speed. That's also true, Your Honor, in the sense that Franachek says nothing whatsoever about a goal of achieving fast compression or faster compression. Now, of course, everyone would like to make something as fast as it could possibly be. Well, that's the motivation there to combine Osterlund with Franachek. But it's not, Your Honor, because there's nothing in Osterlund that would make Franachek faster. No, but I think the theory is that Osterlund teaches you that in choosing the algorithms in Franachek to seek maximum compression, you should also make sure that it's faster in the data transfers to the compressed data than if it hadn't been compressed. So it's saying take that goal from Osterlund and put it on top of the objectives of Franachek. Thank you, Your Honor. Okay, this helps me explain to you why that's not correct and that theory doesn't work. Osterlund doesn't say what you just described as the key point. Osterlund is talking about only one data compression technique, only one, one and only one. So Osterlund does not teach that when you're in a system of multiple data compression techniques and you're selecting data compression techniques among different possibilities. It teaches that faster than uncompressed is desirable, right? Osterlund teaches that data storage can become faster after you compress the data. That's what it teaches, and everybody knows that. If I take something that's one size and I squeeze it down, it's going to take up less space afterwards. But that doesn't account for the time that it takes to compress it, which the claim requires. It also especially doesn't account for the time that it takes to select between multiple compression techniques in a system that has to use multiple. Where does your expert say that Osterlund doesn't teach the faster limitation of the claim? That's extensively in our experts' testimony. So for example, looking at Appendix 7174, Osterlund's contribution to Franischek is limited to a single compression decompression module with a single compression algorithm which does not teach a data accelerator configured to achieve the claim faster than limitation with two different techniques. And it's undisputed that Osterlund does not teach the limitation. Osterlund does not teach it. Franischek does not teach it. Did the board find that Osterlund didn't teach it? Yes, Your Honor, because it said that there's no reasonable expectation of success, right? So that's the whole problem with their theory. And that's the problem with every single one of the six other IPRs that the board has rejected on these patents. Let's just stick with this one, okay? Sure, yes, Your Honor. They have never identified a teaching anywhere in the art, in any reference, that is the faster than limitation of these claims. They have not found that. What they have is one system, Franischek, that uses multiple data compression encoders and has to select between them through a cumbersome process that's appropriate for Franischek. And then they have a different system that's Osterlund that has just one encoder and teaches the fact that once you compress something, you can store it in less time than if you hadn't compressed it, that you can take two different pieces of data, use two different compression algorithms on them, and store that data in less time than if you had never done any of those things at all. Okay, thank you. Mr. Garza, you have two minutes. Talk faster, Mr. Garza. Yes, Your Honor. That was a joke. So just going back to what my friend said about Dr. Zeger's testimony on the faster than, he did not testify that Osterlund does not teach faster than. What Dr. Zeger said on that page is that Osterlund does not teach faster than with two compression models. That's what Franischek teaches. And that's the basic idea here is you have Franischek that already teaches this supposedly inventive aspect that has two compression encoders based on the type of data block. And then Osterlund teaches you to do it, to pick the ones that are going faster. And that's all the claims do. There's no requirement in the claims that you can't have some times that it's slower. What about the testimony that the board relied on at 7141 to 7152 about the delays that would be injected in the system through Franischek? So again, those delays, there's two problems with them, Your Honor. One is that requires the bodily incorporation. It doesn't look at just the teachings themselves. The teachings themselves in Osterlund are clear. You choose faster, and that's what the patentee says, the same thing. You design a system, this black box data accelerator, and you choose the one that's faster. That's it. Osterlund already teaches that. And the second problem with Dr. Zeger's point about delays is that all those delays are in the patent intervention too. The same selection, block 35 in Franischek, sorry, block 35 in the patent is the same as blocks 320 to 330 in Franischek. There's no difference there. And that's really the heart of the problem here is that there's no restrictions in the claims. That's why Dr. Crusair said it's an unlimited, impossible to address these hypothetical possibilities. Even the patentees recognize that once you do it, you're going to tailor the system, that one of ordinary skill in the art knows how to tailor the system. And so if you step back, the only question remaining is whether or not it's within the ken or within the grasp, as the Supreme Court put it, of an ordinary skilled artisan using creativity and common sense to look at Osterlund that says, do compression faster and you're going to get storage that's faster. In Franischek, it teaches you to have two systems, two encoders, excuse me, two encoders that compress each data block. Is it then obvious to say, well, I'm going to use a system that compresses two data blocks and I'm going to choose the ones that do it faster? Yes, it's clearly obvious because that's the express teachings of the prior art. Osterlund tells you to do it that way. And that would even pass the TSM test because it's a specific motivation in the prior art. And it certainly leagues away from KSR, but it's definitely, at the very least, obvious to try because, as Dr. Crusoe repeatedly said, the same algorithms are used. Franischek discloses Lempel-Ziv, the use of Lempel-Ziv. Osterlund discloses the use of Lempel-Ziv. And the patentee discloses the use of Lempel-Ziv along with those other known fast algorithms. So, of course, one would expect success, and that's exactly what they would get. Run Franischek as is, as Dr. Crusoe said you would do if you did not have any restrictions. Run it as is and just use the faster algorithms as Osterlund teaches you. This is very basic, very simple, very straightforward, as Dr. Crusoe repeatedly said. Okay. Thank you, Mr. Yarbrough.